IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Matthew L. Thacker,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:20cv609 (LO/WEF) |
| | ) | |
| Michael Breckon, *et al.*, | ) | |
|     Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Before the Court are three dispositive motions filed by the defendants in this civil-rights

suit brought under 42 U.S.C. § 1983 by Virginia inmate Matthew L. Thacker, claiming failure to

protect: (1) a motion to dismiss as moot plaintiff's claims for injunctive relief, *see* Fed. R. Civ. P.

12(b)(1), filed by D.D. Hicks and Captain Nolan C. Edmonds (officers at Lunenburg

Correctional Center (LCC)), *see* Dkt. No. 112; (2) a motion for summary judgment filed by

Hicks and Edmonds, *see* Dkt. No. 59-1; and (3) a motion for summary judgment filed by Harold

Clarke (the Director of the Virginia Department of Corrections (VDOC)), *see* Dkt. No. 76.

Defendants have provided Thacker, who is proceeding *pro se*, with the notice required by Local

Civil Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), *see* Dkt Nos. 59-1, 78,

112, and Thacker opposes defendants' motions for summary judgment, *see* Dkt. Nos. 75, 91-1.[1]

Because the claims for injunctive relief have been mooted by Thacker's transfer out of LCC, and

---

[1] Instead of filing a separate brief to oppose the second-filed motion for summary judgment, Thacker has filed a motion for leave to amend his memorandum of law opposing the first-filed motion. *See* Dkt. No. 91. The Court will grant the motion *nunc pro tunc*.

the undisputed evidence does not demonstrate that the defendants acted with deliberate indifference to a known risk to Thacker's safety, defendants' motions will be granted.

## I. Background

At all times relevant to the complaint, Thacker was housed at LCC, where, he claims, the defendants failed to protect him from other inmates who attacked him because he is a sex offender. *See* Dkt. No. 21-1, Second Amended Compl. (SAC) ¶¶ 8, 13; *Commonwealth v. Thacker*, CR06034056-00 & CR06034124-00 (July 7, 2006) (convictions for forcible sodomy, Va. Code § 18.2-67.1, and aggravated sexual battery, Va. Code § 18.2-67.3).

Thacker principally casts blame on VDOC Operating Procedure (OP) 425.4, which governs cell assignments for VDOC facilities, and its implementation at LCC. Clarke has submitted under seal a complete copy of OP 425.4. *See* Dkt. No. 80, Clarke Aff. Enclosure A. He avers that institutional staff are responsible for making decisions on inmate bed assignments in accordance with OP 425.4, which directs staff to make individualized determinations about how to ensure the safety of each offender. *See id.* ¶ 11 & Enclosure A. To determine inmate compatibility for double cells, staff must consider an inmate's history of assaultive behavior, potential for victimization or aggressive behavior, history of prior victimization, special medical and mental health status, escape history, age, and any other related information. *See id.* Enclosure A. OP 425.4 further instructs each institution to provide a process for offenders to request cell assignment and bed changes. *Id.* Additionally, OP 425.4 allows inmates to be housed in restrictive housing units when an inmate requests protective custody and no reasonable housing alternative is available. *Id.*

Clarke, along with D.D. Hicks (the Chief of Housing and Special Programs at LCC), also attest to the process for inmate cell transfers. Hicks avers that inmates who feel unsafe may seek

protective custody in the restrictive housing unit (RHU). *See* Dkt. No. 59-3, Hick Decl. ¶ 4. Inmates may avail themselves of this protection even during lockdown periods when other cell movements are prohibited. *See id.* ¶ 13. When an inmate self-reports to the RHU, they will be scheduled to appear before the prison's institutional classification authority (ICA) for reassignment to general population. *See id.* ¶ 5. The ICA will provide a new housing assignment after considering available housing and inmate compatibility. *See id.* An inmate can refuse the proposed housing assignment, in which case the inmate will stay in the RHU until another ICA hearing can be conducted. *See id.* Hicks further attests that inmates may also ask their unit manager for a housing reassignment. *See id.* ¶ 12. As with ICA assignments, these requests will be granted based on cell availability and inmate compatibility. *See id.*

In the SAC Thacker alleges that he was constantly harassed and threatened by numerous inmates, but he indicates that one particular inmate, Steve Foster, was the primary aggressor. Foster was assigned as Thacker's cellmate in 72 pod on or around August 10, 2019. *See* Dkt. No. 21-1, SAC ¶ 11. "Upon information and belief," Thacker avers, Foster had an "extensive" history of committing assault and battery against other inmates. *See id.* ¶ 12. Thacker further avers that Foster told him that he does not like living with sex offenders, and this caused Thacker to experience anxiety because he previously had been "battered, robbed, assaulted or harassed" by other inmates because of his sex-offender status. *See id.* ¶¶ 9, 13. Thacker adds that, during the first two weeks of October 2019, he asked Captain Edmonds three times to be moved to a different cell, reporting that Foster had threatened to kill him because he does not like sex offenders. *See id.* ¶¶ 15–16. According to Thacker, Edmonds responded that, because the warden had frozen all cell moves until January 2020 (except for medical purposes), he could not transfer him to another cell. *See id.* ¶¶ 14, 17.

Captain Edmonds recalls Thacker's relationship with Foster differently. First, Edmonds disputes Thacker's characterization of Foster. *See* Dkt. No. 59-8, Edmonds Decl. ¶ 5. Edmonds attests that, as the unit manager of building 70, where Thacker and Foster were housed in the fall of 2019, he "regularly observed Thacker and Steve Foster," and he "observed Steve Foster to be a mild-mannered inmate who got along well with others." *Id.* ¶¶ 4–5. It was Thacker, Edmonds declares, who "did not get along with Steve Foster," following a pattern in which Thacker "ha[d] great difficulty getting along with his cellmates and other inmates in his given housing unit." *Id.* ¶ 6. Second, Edmonds declares that "Thacker did not tell [him] at any point in Fall 2019 that Steve Foster had threatened to kill him." *Id.* ¶ 8. Edmonds acknowledges that Thacker asked for a housing transfer in the fall of 2019 and explains that the requests were denied because LCC was on lockdown. *See id.* ¶ 6. But, Edmonds avers, he met privately with both inmates "to understand and help resolve their disagreements," and, Edmonds continues, at no time during those meetings did Thacker express that he had been threatened or assaulted by Foster or that he felt unsafe around Foster. *See id.* ¶ 7. Thacker disputes that Edmonds ever engaged in this dialog with him and Foster. *See* Dkt. No. 91-1, Thacker Decl. ¶ 26.

Next, Thacker avers that on October 15, 2019, while he was in the religious library, Foster struck him in the face with his fist, knocking Thacker off a chair and onto the ground. *See* Dkt. No. 21-1, SAC ¶¶ 21–22. Then, Thacker continues, Foster threw that chair at him, striking him in the head. *See id.* ¶ 22. As a result, Thacker avers, he bruised his tailbone and injured his forehead. *See id.* The next day, Thacker was assigned to the RHU and then reassigned to 62 pod one day later. *See* Dkt. No. 59-3, Hicks Decl. Ex. 3. Before this alleged attack, Thacker did not self-report to the RHU notwithstanding the alleged threats made by Foster. *See id.*

In mid-December 2019, Thacker submitted offender requests explaining that he has "been to seg[regation] multiple times for issues with [his] cell partners"; expressing that he "want[s] to accept responsibility for [his] actions and remedy this problem"; and asking to be housed with inmate L. Rader in the 80 building pod. *See* Dkt. No. 1, Ex. D-1 & D-2.

Thacker remained in 62 pod and, he attests, on January 23, 2020, "a known 'cript' gang member" followed Thacker to his cell and struck him twice in the face. *See* Dkt. No. 21-1, SAC ¶¶ 27–28. Afterwards, Thacker self-reported to the RHU "for his own safety." *See id.* ¶ 29. His facility bed history reflects, instead, that Thacker was sent to the RHU a couple days earlier, on January 20, and then was assigned to 72 pod the following day on January 21. *See* Dkt. No. 59-3, Hicks Decl. Ex. 3.

Thacker next avers that a few months later, on April 28, 2020, Foster was assigned to 73 pod, next to Thacker's pod. *See* Dkt. No. 21-1, SAC ¶ 37. For weeks, Thacker continues, Foster threatened that he was going "to get retribution" for Thacker snitching about their altercation in October. *See id.* ¶ 38. Thacker avers that he notified his unit manager and the warden about these threats, and, around May 25, 2020, Foster was moved to the 60 building. *See id.* ¶¶ 39–43.

Early the next year, on January 11, 2021, Thacker was moved to 73 pod. *See id.* ¶ 44; Dkt. No. 59-3, Hicks Decl. Ex. 3. That evening, Thacker avers, an inmate called "DJ" told Thacker to "keep your shoes on and your back to the wall" because "the bloods want to jump you." *See id.* ¶ 49. The next day Thacker reported this to Unit Manager Malone, and he was told that, although he could not be transferred, he could go to the RHU. *See id.* ¶ 47. According to Thacker, he also told Chief Ruffins what had happened, and that officer told Thacker "he did not think that Thacker should go to RHU." *Id.* ¶¶ 48–49. Thacker attests that he stayed in 73 pod,

where, that same day, an inmate named Boo Foo told him to "get out I am going to **ck you up." *See id.* ¶ 50. Ultimately, later that day Thacker self-reported to the RHU. *See id.* ¶ 51. Thacker's facility bed history reflects that he did not enter the RHU until January 13. Dkt. No. 59-3, Hicks Decl. Ex. 3.

On January 14, 2021, Thacker had an internal classification hearing before Hicks and two other prison personnel concerning his return to general population. *See* Dkt. No. 21-1, SAC ¶ 52. Later that evening, Thacker attests, he learned that he would be sent to 33 pod, where "Go Hard the leader of the bloods that put the hit on [him]" also was housed, and so he refused the move and stayed in the RHU. *See id.* ¶ 53. Thacker again chose to stay in the RHU when, a few days later, he was offered a general population spot in 31 pod, in the same building as 33 pod, and then again when he was offered a cell in 73 pod. *See id.* ¶¶ 54–55. According to Thacker, when he explained to Hicks why he did not want to go to 73 pod—because that is "where the problem started"—Hicks wrote him a charge for refusing to go to general population and "laughed in [his] face." *See id.* ¶¶ 55–56. Ultimately, Thacker was reassigned to general population in building 50 on January 26, 2021. *See* Dkt. No. 59-3, Hicks Decl. Ex. 3.

## II. Motion to Dismiss

Hicks and Edmonds move to dismiss for lack of jurisdiction Thacker's claims for injunctive relief. *See* Dkt. No. 112. They contend that these claims have been mooted by Thacker's transfer out of LCC. *See* Dkt. No. 113.

The Court agrees. Article III of the Constitution limits federal jurisdiction to "cases or controversies." U.S. CONST. art. III. If what was once a live case or controversy "ceases to exist after a suit has been filed, the case will be deemed moot and dismissed." *Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 130 (4th Cir. 2020) (internal citation omitted). As relevant here, "a

6

prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). Therefore, the Court will grant the motion to dismiss the claims for injunctive relief against Hicks and Edmonds.

### III. Motions for Summary Judgment

#### A) Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). In evaluating a summary judgment motion, the Court views the evidence, and draws all inferences, in the light most favorable to the nonmoving party. *See E.W.* by *T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018).

#### B) Analysis

##### i. Motion for Summary Judgment: D.D. Hicks and Captain Edmonds

Hicks and Edmonds urge the Court to grant summary judgment in their favor because, they contend, the undisputed evidence demonstrates that they did not act with deliberate indifference to a known risk to Thacker's safety. *See* Dkt. No. 59-2. They principally argue that the undisputed evidence shows that Thacker was provided the option to self-report to the RHU anytime he felt unsafe, but he did not avail himself of that opportunity before Foster allegedly attacked him.

A failure-to-protect claim is governed by the deliberate-indifference framework. *See Thompson v. Commonwealth*, 878 F.3d 89, 97 (4th Cir. 2017). This standard involves a two-part showing: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Id.* at 97–98 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837–38 (1994)). Additionally, the evidence must show that the defendants' failure caused "a serious or significant physical or emotional injury." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (internal citation omitted).

Thacker does not dispute that he could self-report to the RHU. Instead, he declares that he did not want to self-report to the RHU because, if he did, he would be charged with a disciplinary infraction. *See* Dkt. No. 91-1, Thacker Decl. ¶ 2. In support, he cites OP 861.1, which states that disobeying an order to move to general population is a Category II offense. *See* Dkt. No. 91-1, Thacker Ex. 1-1. It appears that Thacker misunderstands when an offense may be levied; inmates are not charged, at least in theory, for reporting to the RHU in the first place, but, instead, if the inmate, after reclassification, refuses to return to a new location within general population. Even drawing an inference in Thacker's favor that he was purposely mislead about the consequences reporting to the RHU, Thacker does not blame Hicks or Edmonds for providing that misinformation. Rather, Thacker avers generally that "the unit manager and officers in charge threatened me with disciplinary action if I leave the housing unit to go to RHU for my safety." Dkt. No. 91-2, Pl. Decl., ¶ 8. He does not mention any specific officer or date when this occurred. If Hicks and Edmonds had purposefully done this after Thacker informed them of a safety risk, a reasonable juror potentially could conclude they "subjectively [were] aware that [their] actions were inappropriate in light of th[e] risk" to Thacker. *See Cox v. Quinn,*

828 F.3d 227, 236 (4th Cir. 2016) (internal quotation marks and citations omitted). But Thacker's own version of events does not demonstrate that Hicks or Edmonds prevented him from self-reporting to the RHU. The undisputed evidence establishes only that Thacker could self-report to the RHU if he felt his safety was in danger, and he did not.

The Court is reluctant, however, to rely solely on this conclusion as a basis for granting defendants' motion for summary judgment, given that doing so potentially could allow prison officials to delegate to inmates their constitutional responsibility "take reasonable measures to guarantee the safety of the inmates," including "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). Having said that, there is an additional basis to grant defendants' motion for summary judgment: Even if the Court were to adopt, for the sake of argument, Thacker's version of events, no reasonable juror could conclude that Thacker suffered an actionable injury.

Concerning Captain Edmonds, Thacker avers that he warned the captain that Foster threatened to kill him; Edmonds took no action, causing Foster to experience anxiety; and then Foster attacked him, inflicting a bruise to Thacker's tailbone and injuring his forehead. "Not every injury suffered by a prisoner at the hands of another establishes liability against a prison official." *Brown*, 612 F.3d at 723. Here, Thacker's testimony establishes that he bruised his tailbone and "injured" his forehead. These are not the type of injuries that prison officials must protect against to comply with the Eighth Amendment. *See Mosley v. Mueller*, No. 1:19-2383, 2020 WL 5986220, at *3 (D. S.C. Mar. 24, 2020) (concluding that medical records showing that plaintiff "suffered from a contusion or bruise when he fell that was treated with Tylenol with no further medical problems" was not objectively serious or significant injury); *Lurz v. Galley*, No. 04-333, 2004 WL 3661336, at *4 (D. Md. Aug. 25, 2004) (opining that scratches and bruises

sustained during cellmate attack are insufficient to show objectively serious injury for failure-to-protect claim); *c.f.*, *Danser v. Stansberry*, 772 F.3d 340, 344, 346 (4th Cir. 2014) (observing that ruptured spleen, punctured lung, and broken ribs, in addition to numerous bruises and abrasions, together qualify as significant injuries to support Eighth Amendment claim); *Case v. Ahitow*, 301 F. 3d 605, 606–07 (4th Cir. 2002) (concluding that attack causing permanent hearing loss could support finding that defendant-guards failed to protect plaintiff-inmate). Moreover, at summary judgment, "a plaintiff must produce *evidence* of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (emphasis added). It is not enough for Thacker to declare that he experienced anxiety because of his housing assignments without providing any medical evidence documenting that he developed that mental-health condition as a result of the challenged condition. *See id.* at 1380; *see also Ashann-Ra v. Commonwealth*, 112 F. Supp. 2d 559, 563 (W.D. Va. 2000) (opining that plaintiff could not satisfy injury element of Eighth Amendment claim because he provided "no facts supporting his bald assertion that stress" from alleged prison condition "made his mental health problems worse"); *Pearson v. Ramos,* 237 F.3d 881, 886 (7th Cir. 2001) (concluding that prisoner "[w]holly lacking in medical knowledge" may not give expert medical testimony).

Next, concerning the claim against Hicks, Thacker has not put forth any evidence that he suffered any injury based on her involvement in his housing assignments in general population. For these reasons, Edmonds and Hicks are entitled to judgment as a matter of law.

ii. Motion for Summary Judgment: Harold Clarke

Clarke argues that the undisputed evidence does not demonstrate that the portion of OP 425.4 governing inmate housing and compatibility is unconstitutional because it fails to protect inmates from harm imposed by other inmates. *See* Dkt. No. 77. Thacker concedes that he

10

cannot show that Clarke, by creating and implementing OP 425.4, failed to protect him from harm and, thus, violated his Eighth Amendment rights. *See* Dkt. No. 91-1, at pp. 6–7. Thacker insists, however, that Clarke failed to protect him from harm in a manner that violated his Fourteenth Amendment rights.

Thacker's Fourteenth Amendment theory is difficult to follow. He seems to argue that during inmate cell classification, which is used to determine cell compatibility, inmates are not entitled to participate and, therefore, the classification process does not comport with due process. *See* Dkt. No. 91-1, at pp. 17–18. Thacker surmises that a without his input, a safe housing decision cannot be made. *See id.*, at p. 19. He further urges that he has "a liberty interest to be free from being robbed, assaulted, and harassed." *See id.*, at p. 18. It appears that Thacker, knowing he cannot prevail on a failure-to-protect claim against Clarke, is trying to transform the failure-to-protect claim into a due-process claim. Even though Thacker invokes the Fourteenth Amendment in the SAC, the operative complaint—liberally construed—does not allege any unfairness with respect to the cell-classification process and its governing operating procedures that would have suggested that Thacker has been seeking, all along, to bring a due process claim.[2] Thacker cannot amend his complaint through a response to a motion for summary judgment. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Perry v. Perry*, No. 5:16-ct-32190, 2019 WL 1440269, at *9 (E.D.N.C. Mar. 29, 2019). Thus, because

---

[2] This conclusion is bolstered by the fact that in Thacker's recent proposed third amended complaint (for which the Court denied leave to amend on the ground that it violated federal joinder rules and failed to state a claim for relief), he did not raise any due-process claims. *See* Dkt. No. 103-1. Rather, Thacker only sought to bring failure-to protect claims (the same ones at issue in the SAC as well as new ones against additional defendants).

Thacker concedes that he cannot demonstrate that Clarke failed to protect him from harm,

Clarke's motion for summary judgment must be granted.

### IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this

Memorandum Opinion, the defendants' motions to dismiss and for summary judgment, *see* Dkt.

Nos. 112, 59-1, 76, will be granted.

Entered this ___ day of _____ 2022.

Alexandria, Virginia

_____
/s/
Liam O'Grady
United States District Judge

12